17 N.J. Super. 76 (1951)
85 A.2d 343
EDWARD DUNLEAVY, PETITIONER-APPELLANT,
v.
TIETJEN & LANG DRY DOCKS, RESPONDENT-APPELLEE.
Superior Court of New Jersey, Hudson County Court Law Division.
Decided December 3, 1951.
*77 Messrs. Reich & McDevitt, attorneys for petitioner-appellant (Mr. Patrick F. McDevitt, of counsel).
Mr. Walter H. Jones, attorney for respondent-appellee (Mr. Walter R. Hespe, of counsel).
DREWEN, J.C.C.
This is a workmen's compensation appeal. The present petition was filed in July, 1950. After hearing in the bureau it was dismissed. There had been a prior petition, filed in March, 1944, which was withdrawn by consent of the bureau. Thereupon petitioner, through his counsel, sought and obtained relief both in money payments and hospital treatment under the authority and provisions of the federal law.
*78 The petition before us is for a plenary award under the New Jersey statute, concededly reducible by the money payments already received. The facts and circumstances bearing on the injury itself as well as the history of the case thereafter are all equally relevant to the present decision.
Petitioner had been employed by respondent for about two years as an electrician when, on June 19, 1942, he sustained his injury. After the regular day's work on the stated date he was sent aboard the Russian ship Dnepestroy for the making of repairs in the refrigerating compartment. The vessel at the time was moored to Pier 6 at Hoboken, in the North River. Its crew was aboard and the vessel was afloat. From the workman's testimony it appears that it was hurried work, since the vessel had to be ready for sailing the next morning. He was one of a group of four or five assigned to replace "equipment that was there * * * putting electrical wires in, a few lights here and there * * *." Another statement in the proofs is that the men were to repair worn out electrical equipment, or to install new equipment where that was required. While this work was proceeding an explosion occurred in the refrigeration hold and as a result petitioner was injured.
The first petition was discontinued on May 19, 1944, the stated reason being that it was the opinion of petitioner's attorney "that the matter is one that is cognizable under the U.S. Employees' Compensation Commission." The claim was then referred to New York counsel who on May 16, 1944, wrote to respondent's insurance carrier requesting that petitioner be furnished immediate medical and surgical attention pursuant to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C., sec. 901. Thereafter extensive medical treatments and hospitalizations were given and compensation paid to petitioner as required by the stated act. All payments were made and expenses paid by respondent's carrier. The rate of payment as provided was $25 weekly, for any and all weeks during which the employee was unable to work. The periods of payment recurred at intervals until *79 1950 and reached a total of $2,914.28 Petitioner appeared from time to time at the office of the United States Employees' Compensation Commission in New York to participate in discussions having to do with the payments and with his receiving further or different medical treatment.
It would appear that in the manner stated petitioner obtained all the relief that was requisite in his case within the provisions of the federal law; and the claim is still alive in the federal agency, so that any relapse would entitle him to further compensation payments. At any rate, it was after the described course of federal relief had run that the present petition was filed, making again the same claim under the New Jersey statute.
Specifically, the dismissal in the bureau was for the want of jurisdiction. The question for decision is whether under all the facts and circumstances the workman's continued and successful recourse to the federal authority for the satisfaction of his claim has had the effect of rendering the jurisdiction exclusively federal and so preventing the claim here filed. That, in my view, is the main question. There are two subordinate questions. Respondent contends: (a) that petitioner is barred by an election of remedies, and (b) that he is barred by the New Jersey statute of limitations.
As to the first of the latter contentions, I see no such factor in the problem. Petitioner urges that the question of election does not apply and relies on Baskin v. Industrial Accident Commission, 201 Pac.2d 549 (Cal. 1949), 338 U.S. 854 (1949); 217 Pac.2d 733 (Cal. 1950), and Allisot v. Federal Shipbuilding and Dry Dock Co., 4 N.J. 445 (1950). I find nothing in these opinions to indicate that in either case prior proceedings had been had or payments made under the Longshoremen's Act. I think the point here is determined by the fact that whether the jurisdiction is state or federal, it must be regarded as exclusively one or the other. It will become indubitably clear, I think, that the whole development of the doctrine hereinafter considered in relation to the main question creates such exclusiveness. Needless to say, exclusiveness *80 of jurisdiction precludes election. Section 903 of the Longshoremen's Act provides: "Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law." Section 905 provides: "The liability of an employer * * * shall be exclusive and in place of all other liability of such employer to the employee * * *." To employees entitled to the benefits of the Longshoremen's Act the remedy thereby afforded is exclusive. South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 256 (1940).
Assuming, on the other hand, that the case is within the jurisdiction of the State, it follows that the prior proceedings before the federal authority without jurisdiction therefor certainly would not bar petitioner's right to seek compensation in the State. In the converse situation the federal courts have so held. Great Lakes Dredge & Dock Co. v. Brown, 47 F.2d 265 (D.C.N.D., Ill. E.D. 1930); Massachusetts Bonding & Ins. Co. v. Lawson, 149 F.2d 853 (C.C.A. 5, 1945). Petitioner's position is in no way affected by election.
As to the statute of limitations, it is first to be noted that respondent admits that compensation payments were made and medical treatments given within the relevant period. It is contended, however, that these benefits were accorded under the Longshoremen's Act and not under the New Jersey Act, the argument being that they are therefore without effect upon the running of time against the claim in this State. It is true that according to the general rule part-payment will not affect the running of the statute unless it appears that the payment relied on "was made on the particular debt or obligation in controversy * * *." 142 A.L.R. 389, 390 (1943). Needless to say, however, the statute of limitations can have place here only on the assumption *81 that there was no federal jurisdiction and that the merits of the claim are restricted to adjudication in the state forum. But even assuming the absence of federal jurisdiction, the payments already made will have to be regarded as made in contemplation of the terms of the New Jersey statute. Our "scheme of compensation does not of necessity depend upon the mutual assent of the parties, for it enters by operation of law into every contract of hiring made within this State, unless there be an affirmative rejection of the plan for the alternative common-law liability for negligence as modified by the provisions of Article 1 of the Act * * *. Thus it is that reality of consent is not an indispensable element, although it may exist in the individual case, for Article 2 is applicable even though the parties did not know of the existence of the statute, or, knowing, did not in fact have it in view." Miller v. National Chair Co., 127 N.J.L. 414, 417 (Sup. Ct. 1941), affirmed 129 N.J.L. 98 (E. & A. 1942). Great Lakes Dredge & Dry Dock Co. v. Brown, supra, involved the converse situation. There payments had been made under a state compensation act, the employee then bringing proceedings under the Longshoremen's Act more than a year after the injury, a year being the period of limitations under sec. 913 (a), and the payments having been made within the year. The federal court held that any payments made must have been made in contemplation of liability under the Longshoremen's Act, and accordingly held that the payments suspended the running of the statute and that the employee could recover under that law. The reasoning of this decision is persuasive and should apply to reverse situations like the present one. I think, therefore, that petitioner is not barred by the limitational sections of our act. In view of the determination that follows, however, the issue is academic. Annotations bearing on it may be found in 144 A.L.R. 606 and 142 A.L.R. 389 (1943).
Coming to the main question of jurisdiction, we are met with a doctrine which appears to be clear and definite and which, in my judgment, has complete application to the problem *82 and provides the solution. All the decisions having part in evolving it are reviewed by our own Supreme Court in Allisot v. Federal Shipbuilding and Dry Dock Co., supra, but not in their relation to this particular problem, which appears to be one of novel impression. The doctrine runs through a course of development whose beginning may, for all present purposes, be seen in the decision of the United States Supreme Court in So. Pacific Co. v. Jensen, 244 U.S. 205 (1917). Jensen, while engaged in unloading lumber from a ship, was driving a small electric freight truck from the ship to an adjoining pier when he was killed by the striking of his head against an obstructing part of the vessel. The New York Compensation Commission made an award to the next of kin. The United States Supreme Court held the New York statute that provided the award to be in violation of the Admiralty Clause of the Federal Constitution. The court held that any state legislation, to the extent that it deals with matters of possible admiralty jurisdiction, is invalid "if it contravenes the essential purpose expressed by an act of Congress, or works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its international and interstate relations," Id. at p. 216. At p. 217 we read: "The work of a stevedore, in which the deceased was engaging, is maritime in its nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties in connection therewith were matters clearly within the admiralty jurisdiction." At pp. 217-218 we read: "The legislature exceeded its authority in attempting to extend the statute under consideration to conditions like those here disclosed. So applied, it conflicts with the Constitution and to that extent is invalid."
It had previously been held to be a requirement of the United States Constitution that a uniform system of admiralty law be dominant in the federal courts. The Lottawanna, 21 Wall. 558; (U.S. 1874). But the effect of the Jensen decision *83 was expressly to subjugate to that dominant uniformity, for the first time, the jurisdiction of state courts over matters within the general scope of admiralty as provided by the saving clause of the Judiciary Act of 1789. 1 Stat. 76 (1789), 28 U.S.C.A., sec. 371 (1940). See Messel v. Foundation Co., 274 U.S. 427 (1927). Implicit in the Jensen decision was the principle that the judicial authority of the state might be exercised in matters maritime insofar as such exercise worked no "material prejudice to the characteristic features of the general maritime law," and did not "interfere[s] with the proper harmony and uniformity of that law in its international and interstate relation." Conditions thus imposed by this sanctioning of limited state jurisdiction were made explicit by the United States Supreme Court in Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469 (1922). What the decisions had achieved at this point was the creation of a paramount necessity, that of distinguishing between matters maritime and matters maritime but local, the former being exclusively within the federal jurisdiction and the latter exclusively within that of the state. (Here it is well to note that in Allisot v. Federal Shipbuilding and Dry Dock Co., supra, hereinafter discussed, our own highest court affirms state jurisdiction in a case which it is at pains to show is maritime but local, though without expressly asserting the distinction.) As it turned out, the problem of making the distinction referred to between the two kinds of maritime cases was found too difficult for solution. Reviewing the history of the question later, the United States Supreme Court observed: "When a state could and when it could not grant protection under a compensation act was left as a perplexing problem, for it was held `difficult, if not impossible' to define this boundary with exactness." Davis v. Dept. of Labor, 317 U.S. 249, 252 (1942). For a more graphic exposition of the quite impossible depths of the problem of telling where the "marginal employee" in maritime work was to look for compensation for his injuries, reference is made to 53 Yale Law J. 348 (1944).
*84 Following the Jensen decision, Congress twice amended the Judiciary Act in an attempt to authorize the states to include maritime workers within their compensation schemes. Each amendment was annulled as an unconstitutional delegation of legislative power. Knickerbocker Ice Co. v. Stewart, 253 U.S. 149 (1920); State of Washington v. W.C. Dawson & Co., 264 U.S. 219 (1924). Then, in 1927 Congress enacted, constitutionally, the Longshoremen's and Harbor Workers' Compensation Act, supra.
But the trouble persisted. The Longshoremen's Act was held to have accepted the Jensen line of demarcation between state and federal jurisdiction. Parker v. Motorboat Sales, 314 U.S. 244 (1941). That is, the act preserved the perplexing necessity of the distinction already mentioned. The logical result was no more than a change in the verbiage of the question, which could then be asked: On which side of the Jensen line does the case belong? It was to this phase of the developing controversy that the United States Supreme Court addressed its opinion in Davis v. Dept. of Labor, 317 U.S. 249 (1942). In that case a new position was taken. The court instituted the "twilight zone" and upon the principle thereof allowed to the claimant a practical choice of jurisdiction as between the federal and the state in "twilight zone" cases, that is, in cases questionable, marginal or borderline, in cases where the law of the land and of the sea could fairly be said to encroach or overlap.
In the Davis case the Supreme Court of the State of Washington had approved the denial of an award under its state compensation law to the widow of a workman who at the time of his death had been at work on a barge afloat in a navigable river and from which he had fallen and drowned. The fall occurred while he was engaged in stowing on the barge, for towing away, steel fragments of a bridge then being dismantled and which fragments he had himself helped to cut. The Washington statute provided compensation if the statute could be made to apply "within the legislative jurisdiction of the state." The act related to "all employees *85 or workmen * * * engaged in maritime occupations for whom no right or obligation exists under the maritime laws." The United States Supreme Court reversed the state court's denial of an award.
The enabling and liberalizing effect of the Davis decision is emphasized and heightened by the dissent of the Chief Justice in which he peremptorily rejected the new doctrine "that recovery under either the state or federal act is to be sustained if the case is thought a close one." There are lengthy passages in the majority opinion which might with telling relevance be quoted here. Suffice it to say that the court reviews fully the enduring difficulty and the decisions dealing with it. It recognizes "that shadowy area within which, at some undefined and undefinable point, state laws can validly provide compensation." It admits that the highest court had been unable to give any guiding definite rule to determine the extent of state power in advance of litigation. It recalls its holding that the margin of state authority must "be determined in view of surrounding circumstances as cases arise"; and observes that "the determination of particular cases of which there have been a great many, has become extremely difficult," all resulting in "serious confusion" and "jurisdictional dilemma."
It is not overlooked that the Davis case decision was rested specifically upon a presumption of constitutionality in the state statute, but the presumption was conditioned upon the force and effect of "all the circumstances" of that case. In ways both positive and negative the circumstances thus referred to have application to the problem here. The dominant circumstance, which the opinion so fully recites, is that of the utterly confused state of the law. Also, the court emphatically notes that in the case before it no payments had been made or other action taken under the Longshoremen's Act; in other words, that there had been no prior or conflicting federal proceedings. That negative prerequisite is in the instant case conspicuous by its absence.
*86 Notwithstanding all else, however, the Davis decision did not bring the doctrine to the fullness of according clear freedom to choose in doubtful cases the one or the other jurisdiction. While that absolute implication is inescapable, complete articulation was still lacking. Let us say, for the greater strength of the present thesis, that standing alone the present service of the Davis decision might arguably be restricted to strong implication, analogy and dicta. We find, however, that what the Chief Justice so rightly apprehends in his dissent was soon to have clear pronouncement, that is, the right of recovery under either federal or state law at the option of the claimant "where the case is thought to be a close one." We find this pronouncement in two United States Supreme Court precedents. The first of these originates in Moore's Case, 80 N.E.2d 478 (Mass. 1948). There the workman was injured aboard a vessel in dry dock floating in navigable waters. The greater portion of his work was on the pier though occasionally he was required to go aboard vessels. There was an award and appeal to the state court. After considering the Davis decision at length and its effect on the prior state of the law, the appellate court addressed itself to "the fixing of the boundaries of the new twilight zone," and recognized that for this the Davis case "gives us no rule or test other than the indefinable and subjective test of doubt." The appellate state court concludes:
"We are the more inclined to include within the twilight zone the case of a workman engaged in an ordinary land occupation although occasionally going upon a dry dock or vessel to make repairs because in the latest case of that particular type decided in the Supreme Court of the United States, John Baizley Iron Works v. Span, 281 U.S. 222, 50 S.Ct. 306, although the case was held to be one exclusively of Federal cognizance, three of the justices dissented, and Mr. Justice Black in his opinion in the Davis case refers to the Baizley Iron Works case as if it were one of those responsible for the existing confusion. Moreover, the distinction between working on navigable water in repairing a previously completed vessel and doing precisely the same work on navigable water upon a vessel in process of construction may be thought a narrow one of doubtful practical validity."
The state award was approved.
*87 Moore's Case was affirmed by the United States Supreme Court. Bethlehem Steel Co. v. Moore, 335 U.S. 874, 69 S.Ct. 239 (1948), the Supreme Court citing Davis v. Department of Labor, supra, but rendering no opinion.
The last case in the line of development is the Baskin case which first appears as Baskin v. Industrial Accident Commission, 201 Pac.2d 549 (1949). There the California Industrial Commission dismissed a petition on the ground that the case was exclusively within the federal jurisdiction and the state courts affirmed. In granting certiorari (338 U.S. 854; 70 S.Ct. 99 (1949)), the United States Supreme Court remanded the cause to the state court for rehearing, stating:
"* * * It appears that the decision of this Court in Bethlehem Steel Co. v. Moore, 335 U.S. 874, affirming the decision of the Supreme Judicial Court of Massachusetts, 323 Mass. 162, 80 N.E.2d 478, was not available to the District Court of Appeal (Cal.) at the time of its consideration of this cause. The judgment is vacated and the cause remanded to the District Court of Appeal for reconsideration in the light of Bethlehem Steel Co. v. Moore, supra, and Davis v. Dept. of Labor, 317 U.S. 249 * * *."
Upon resubmission of the case the California court reversed its former holding (Baskin v. Industrial Accident Commission, 217 Pac.2d 733 (1950)). The later opinion is important in view of the subsequent affirmance by the United States Supreme Court, infra, for in it the court said, at pp. 737-8:
"The affirmance in Bethlehem Steel Co. v. Moore * * * of Moore's case * * * plainly indicates although no opinion was filed, that the Supreme Court considers the present case within the `twilight zone.' The Massachusetts court in Moore's case took a different view of the Davis case than we took, giving it more latitude than we thought it had, but the affirmance in 335 U.S. 874 * * * based on the authority of the Davis case, shows theirs was the correct view. It cannot be gainsaid that the facts in Moore's case and in Baskin's are very similar. In both instances the major part of the employee's work on shore, and in both instances he was injured while working on a vessel in commission, in navigable waters, and being repaired under a maritime contract. Our clear duty is to reverse our former holding in this case, on the authority of Bethlehem Steel Co. v. Moore, supra, and Davis v. Dept. of Labor, etc., supra."
*88 In Kaiser Company, Inc., v. Baskin, 340 U.S. 886 (1950) motion was granted to affirm the above-mentioned California case (i.e., 217 P.2d 733), citing Baskin v. Industrial Accident Commission, 338 U.S. 854, Bethlehem Steel Co. v. Moore, 335 U.S. 874, and Davis v. Dept. of Labor, 317 U.S. 249.
The affirmance of Moore's Case, supra, by the United States Supreme Court and its subsequent remanding of the Baskin case must be taken as approval of the interpretation of the twilight zone doctrine as expounded and defined by the Massachusetts court: an area of doubt in which the state and federal compensation acts overlap "and the injured workman may recover under either of them." It regarded "the Davis case as intended to be a revolutionary decision deemed necessary to escape an intolerable situation and as designed to include within a wide circle of doubt all waterfront cases involving aspects pertaining both to the land and to the sea where a reasonable argument can be made either way, even though a careful examination of numerous previous decisions might disclose an apparent weight of authority one way or the other."
Now, there is nothing to warrant the view, as I understand it, that the twilight zone doctrine makes any change in the location of the line, be it actual or theoretical, between matters maritime and matters maritime but local. Its only purpose can be, as I see it, to obviate entirely the difficulty of relating the line to a troublesome case. The implementation of this remedial measure is the permission to the claimant in such a case to submit his claim to either jurisdiction, the corollary being that the jurisdiction chosen will be upheld. Any idea that the result of this is concurrent jurisdiction is at once corrected by the exclusional provisions of the Longshoremen's Act, for we are not to suppose that the United States Supreme Court, in developing for the perplexed claimant a free choice of a forum, intended to oppugn the constitutional character of the act of Congress. The doctrine, I submit, may fairly be described as an exigent and compulsory *89 accommodation to an otherwise intolerable condition having its origin in the very nature of things. Through it all, however, the exclusive character of the federal jurisdiction is expressly maintained. The court in the Davis case says that this exclusiveness becomes meaningful "after a litigant has been found to occupy one side or the other of the doubtful jurisdictional line," that is to say, after he has made the choice and so resolved the doubt. Of necessity, according to this, exclusiveness goes with the choice. The dogmatic quality of the solution may indicate the extremity of its need.
It is my judgment that the total force of the decisions puts it beyond serious question (a) that the instant claim is within the twilight zone and therefore cognizable in either of the two jurisdictions, and (b) that claimant's recourse to the federal jurisdiction and the satisfaction of his claim there to the extent already set forth vests final jurisdiction of the claim in the federal court.
As to the first of these propositions, the thoroughgoing discourse in the Allisot case on the difficulty of distinguishing between admiralty and maritime-local issues should suffice to establish the present case in the twilight category. In addition there is the complete difference between the status of the vessels in the two cases. Here, as already stated, the vessel was and had been in full commission at the time of the injury, was afloat in navigable waters, with crew aboard and scheduled to sail the following morning. The Allisot opinion significantly makes it a point to quote testimony which describes the vessel in that case as undergoing such drastic reconstruction as to have been virtually no more than an empty hull. For classification in the twilight zone it is not necessary that the precise character of the claim be determined. Does it arise out of a marginal case? Does it admit of doubt? Does it "involve aspects pertaining to both the land and the sea"? These are the relevant questions. And how the answers could be negative in view of the contrasts just noted and all the anxious puzzlements in the books on the *90 general subject, I do not see. And the nature of petitioner's work in the refrigeration plant might go so far, ex arguendo, as to show that it was essential to the preservation of perishable cargo, or to the safe and wholesome feeding of the crew at sea, or both.
What must not be overlooked is that most certainly if the Allisot case was, as the court found, within the twilight zone, the present case is necessarily so. (See Moore's and Baskin cases, supra.)
Any idea that a twilight zone case belongs ipso facto exclusively in the state must imply that the effect, if not the design, of the twilight doctrine was to enlarge the state jurisdiction at the expense of the federal. Such an idea would be repugnant to the basic constitutional relation of the federal jurisdiction to maritime causes. The truth is that without the liberalizing twilight doctrine no close or doubtful case could ever with jurisdictional assurance, under the vast contrariety of precedents, be brought to judgment in a state court. (See dissent of the Chief Justice in the Davis case.) The ruling opinion in the Davis case leaves no doubt that if the federal jurisdiction had had first cognizance of the claim and proceeded to final award, it would have been upheld. The court said: "33 U.S.C. sec. 920 * * * provides that in proceedings under that act (Longshoremen's), jurisdiction is to be `presumed in the absence of substantial evidence to the contrary.' Fact findings of the agency, where supported by the evidence, are made final. Their conclusion that a case falls within the federal jurisdiction is therefore entitled to great weight and will be rejected only in cases of apparent error * * *." And on the other hand, I see no reason to doubt that had the Allisot claim gone to an award by the federal agency there would be nothing to disturb it.
It so happens that in the cases that feature the development of the doctrine it is state jurisdictions that are approved. It is my view that for obvious reasons this is entirely devoid of juridical significance. In the first place, it is the jurisdiction of the state court that is affirmed because it is the *91 state court that first exercised it. Had the present case been prosecuted in the state forum the result could not have been challenged for any lack of jurisdiction. That is how the doctrine operates. Moreover, in any maritime case, apparent or real, where jurisdiction comes into question the test is directed not against the federal authority but almost uniformly against the state, the jurisdiction of the federal agency being normally assumed. But the greater importance attaches, I think, to the fact that the doctrine of the twilight zone was devised for service in a sphere of acknowledged, philosophic doubt and that its very nature, therefore, is to work both ways. For a twilight zone case that was held to the federal jurisdiction as against the state, see Hillcone S.S. Co. v. Steffen, 136 Fed.2d 965, 967 (1943). Not otherwise could the courts have surmounted the baffling disorder.
Coming to the second proposition, that of vested jurisdiction, it is my judgment that the prime determinant of this decision is the history of the case in the federal agency following the New Jersey discontinuance. If petitioner is to be permitted the further prosecution of his claim in the State, having already been accorded in the federal jurisdiction the full relief thus far allowable in his case under federal law, it must follow that in every claim of the kind it will be the right of the petitioner to seek his advantage initially in the jurisdiction where advantage initially appears, and as in the process of time and circumstance advantage shifts to the other jurisdiction, promptly to pursue it thither.
When petitioner withdrew his claim from the state court and submitted it to the federal agency in 1944 it was distinctly to his advantage to do so  the weekly payments provided were higher than in the State. And now that he would return to the State, that likewise would be to his distinct advantage, for while the federal law provides compensation throughout the period of actual incapacity for work, the state law would provide additionally an award for injury as such, unaffected by actual capacity for work, both as to amount and duration of payments.
*92 Not only does counsel admit that it is the latter advantage that is presently sought, but upon the oral argument its availability was emphatically urged as lending strength and reality to his position. This observation, of course, carries no criticism, for none is intended or called for, but it is nevertheless important that we see clearly what it is the problem presents. Petitioner's moving back and forth between the jurisdictions may or may not be fairly spoken of as a calculated maneuver, but so far as the effect of the precedent is concerned it would make no difference whether that be so or not.
No thought of approving the return of petitioner's claim to the state jurisdiction can escape the challenge  upon what authority? An outright violation of the twilight zone principle could not possibly be avoided. That principle accords to the claimant an option of one jurisdiction or the other, at the same time freeing the choice from the jurisdictional hazard. The argument now made for departure from that principle is instinct with an unformulated tenet that the matter of jurisdiction should not be permitted to stand in the way of otherwise available benefits like those at stake. In a word, what petitioner seeks is a change from an optional to a duplex jurisdiction, something by which he would be permitted to supplement one scheme of relief by access to the other, each serving at a different stage of the procedure. The implication here is drastic, for what it involves is not truly a contention for jurisdiction but rather a contention that the ordinary concept of jurisdiction, with respect to the state court as well as the federal court, in this and all comparable situations and so far as may be needful to the purpose, be liquidated. Of course, if a claimant can pass from the federal to the state court in this manner, he can do the same thing in the opposite direction, theoretically at least, if not for tangible though unpredictable reasons differing from those here present. The result would be, to adapt an expression from the Davis case opinion, a "meaningful" jurisdiction in neither forum.
*93 Petitioner attempts to make of the Allisot decision a tacit precedent for the very thing just described, by claiming that in that case there had been prior compensation payments under the federal act. Nothing of that kind appears in the opinion, but whatever the fact may be it is certain that no such question was before the court and nothing of the kind is a factor in the decision. In DeGraw v. Todd Shipbuilding Co., 23 N.J. Misc. 298 (Comm. Pleas 1945), cert. dismissed 133 N.J.L. 402 (Sup. Ct. 1945), affirmed 134 N.J.L. 315 (E. & A. 1946), there were prior federal payments totalling $17. The reason such payments did not avail against state jurisdiction is that the case was not in the twilight zone, being clearly maritime-but-local.
Petitioner does what he can to neutralize the effect of his submission to the federal jurisdiction by emphasizing the informality of the procedure. There is uncontradicted expert testimony in the record that whatever lack of formality is shown to have attended petitioner's obtaining of the relief he asked is in full accord with the procedure ordained. Of course, the federal agency complied with the provisions of the federal statute. Petitioner says the payments made to him were voluntary. It should be enough to point out that counsel on his behalf discontinued the New Jersey proceedings; that he thereupon demanded in writing of respondent's insurance-carrier that medical and surgical treatment be immediately furnished as provided by the Longshoremen's Act; that this demand was complied with; that, in addition, weekly payments were made under the provisions of the Longshoremen's Act; and that these were accepted by petitioner, who was fully cognizant  though I deem that to be of no moment  that he was deriving these benefits under the federal law. Section 914 (a) of the Longshoremen's Act provides: "Compensation under this chapter shall be paid periodically, promptly, and directly to the person entitled thereto without an award, except where liability to pay compensation is controverted by the employer." Petitioner's claim was before the federal agency for operation thereon of *94 the federal statute for a total period of approximately six years. Surely one cannot invoke the exercise of jurisdiction as effectively as this petitioner invoked that of the federal agency and be free to repudiate it later as in these circumstances he would do. It might turn out to be a thing of far consequence if he could.
The fact that any further award to petitioner would be reduced by the amount already paid under the federal law, creates no merit in the case. This can fairly be thought of, I submit, as bargaining and hindsight; and the reduction would be legitimate only if the federal court did not have jurisdiction. We are not dealing here with quantitative factors but with principles of jurisdiction and procedural order as interpreted and defined in the decisions.
I find no authority for the ruling that petitioner asks. There is ample authority against it, and cogent considerations of policy as well. The petition is dismissed for want of jurisdiction in this court.