86 N.J. Super. 125 (1965)
206 A.2d 180
LEON GADDIES, PETITIONER-APPELLANT,
v.
TRENTON MARINE TERMINAL, INC., RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 21, 1964.
Decided January 12, 1965.
*126 Before Judges CONFORD, KILKENNY and LEWIS.
Mr. Bernard A. Campbell argued the cause for appellant (Mr. Adolph F. Kunca, attorney)
Mr. John W. Taylor argued the cause for respondent.
The opinion of the court was delivered by KILKENNY, J.A.D.
This is an appeal by petitioner from a judgment of the Mercer County Court, reversing an award of compensation benefits made in petitioner's favor by the Division of Workmen's Compensation. The County Court determined that, under the facts of this case, the Division was without jurisdiction to make the award because petitioner's remedy was exclusively within the provisions of the Federal Longshoremen's and Harbor Workers' Compensation Act of 1927, 33 U.S.C.A., sec. 901 et seq.
Petitioner had been in respondent's employ since 1955 as a stevedore-laborer. He worked on the dock and in the warehouses, which are on land, and occasionally worked down in *127 the hold of a ship, which would be tied to a dock at respondent's location on the navigable waters of the Delaware River. On December 7, 1960 petitioner was instructed to go aboard a ship so tied to the dock and help unload cement therefrom. He was down in hold number 1 of the ship and had lifted a bag of cement to place it on a pallet to be hoisted to top side when the bag split and, while attempting to save it, he hurt his back.
The trial record does not reveal how many times prior to December 7, 1960 petitioner had worked aboard ship for respondent, beyond petitioner's testimony that working down in the hold of the ship was part of his "combined" duties and the "last time" prior to the accident that he had worked aboard ship was in October of 1959, when he worked about 30 hours unloading cement, placing the bags of cement on pallets which would be hoisted from the hold by a crane on the ship. Petitioner also testified that he had helped to unload steel and paper, but he did not specify when or how that unloading was done.
There is no dispute as to the employment relationship, or the happening of the accident on December 7, 1960 in the manner and at the precise place described above, or that the Delaware River is navigable water. The parties also stipulated at the hearing before the Division of Workmen's Compensation that the respondent employer had voluntarily paid petitioner $323.95 for temporary disability benefits under the Federal Longshoremen's and Harbor Workers' Compensation Act, at the weekly rate fixed thereby. This payment was not the result of any proceeding brought by petitioner.
Petitioner argues that he had a right to seek the benefits provided for in the New Jersey Workmen's Compensation Law, R.S. 34:15-7 et seq., because he was only a laborer, not a stevedore or longshoreman, and his work was of a strictly local character, the greater portion of it being on the dock and his work aboard ship being only occasional and infrequent. He also urges that there was no testimony as to who requested him to go aboard the ship, or as to the size of the ship or *128 whether it was in commission and capable of navigation under its own power, so as to make his activity thereon subject to the federal legislation.
Despite petitioner's contention on appeal that he was not a stevedore or performing stevedoring duties at the time of the accident, the trial record does not support such contention. In his workmen's compensation claim petition, petitioner stated his occupation as "Stevedore-Laborer." He was, at the time of the accident, actually working down in hold number 1 of the ship, helping to unload its cargo, and the ship was, of course, moored to a dock and in navigable waters. The unloading of such a ship is the work of a stevedore, is directly related to commerce and navigation, and "stevedoring is maritime in nature." Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917). Hence, petitioner's activities at the time and place of the accident were maritime in character.
In Northern Coal & Dock Co. v. Strand, 278 U.S. 142, 49 S.Ct. 88, 73 L.Ed. 232 (1928), the employee, as here, was expected to work both upon the land and on the water. In that case, the employee was killed while doing stevedore work on a vessel lying in navigable waters. The court summed up the applicable rule as follows:
"* * * [h]is employment, so far as it pertained to such work, was maritime * * * and the rights of the parties must be ascertained upon a consideration of maritime law. * * * The unloading of a ship is not a matter of purely local concern. It has direct relation to commerce and navigation, and uniform rules in respect thereto are essential. The fact that Strand-worked the major portion of the time upon land is unimportant. He was upon the water in pursuit of his maritime duties when the accident occurred." (278 U.S., at p. 144, 49 S.Ct., at p. 89; italics ours)
So, in the instant case, petitioner's activities at the time of the accident determine the applicability of the Federal Longshoremen's and Harbor Workers' Compensation Act, and the fact that petitioner "worked the major portion of the time upon land is unimportant."
*129 So, too, in Flowers v. Travelers Insurance Company, 258 F.2d 220, 221 (5 Cir. 1958), certiorari denied 359 U.S. 920, 79 S.Ct. 591, 3 L.Ed.2d 582 (1959), the court found that the employee's presence on board ship as a welder "was none the less maritime even though 80% of his work was generally ashore * * * The non-maritime nature of the so-called regular work or duties is completely irrelevant. * * *" (Italics ours) Thus, the regularity and frequency of the employee's unloading of ships, as compared with his other work duties on land, are not controlling. The rule is summed up in 2 Larson, Workmen's Compensation Law, § 89.22, p. 410 (1961), in these words:
"Loading and unloading ships was definitely related to commerce, even when the particular workman's participation in this function was intermittent or infrequent."
Cited is Employers' Liability Assurance Corp., Limited of London, England v. Cook, 281 U.S. 233, 236, 50 S.Ct. 308, 309, 74 L.Ed. 823 (1930), where the court said:
"Whether Cook's employment contemplated that he should work regularly in unloading vessels or only when specially directed so to do is unimportant. The unloading of a ship is not a matter of purely local concern * * *. Under the circumstances disclosed the state lacked power to prescribe the rights and liabilities of the parties growing out of the accident. * * *"
We find that language equally applicable here.
The law recognizes that there is a "twilight zone" in which employees "occupy that shadowy area within which, at some undefined and undefinable point, state laws can validly provide compensation." Davis v. Department of Labor, 317 U.S. 249, 253, 63 S.Ct. 225, 227, 87 L.Ed. 246 (1943). When an employee is properly in that "twilight zone" he may seek his relief, at his election, under the federal act or under the state law.
We have been referred to no case where the "twilight zone" doctrine has been held applicable on facts similar to those *130 herein. Where that doctrine has been applied to permit a workmen's compensation claim under state law, the facts are readily distinguishable. A few examples will suffice. In Allisot v. Federal Shipbuilding & Drydock Co., 4 N.J. 445 (1950), the employee was working as a painter on an army transport moored alongside a dock in the Hackensack River, navigable water, while the ship was undergoing major alterations, a conversion or rebuilding of the vessel. It was held that his employment was not so directly related to navigation at the time as to exclude a claim under the local workmen's compensation law. In Dunleavy v. Tietjen & Lang Dry Docks, 17 N.J. Super. 76 (Law Div. 1951), affirmed o.b. 20 N.J. Super. 486 (App. Div. 1952), the employee, an electrician, was injured while aboard a ship moored to a pier, for the purpose of making repairs in the refrigerating compartment. It was held that his claim was cognizable either under the Longshoremen's and Harbor Workers' Compensation Act or the State Compensation Act. In those cases, the employee was not engaged in the loading or unloading of the ship, an activity concerned directly with navigation and commerce, as in the instant case.
Compare Chappell v. C.D. Johnson Lumber Corp., 112 F. Supp. 625 (D.C. Or. 1953); Noah v. Liberty Mutual Insurance Co., 267 F.2d 218 (5 Cir. 1959); Ellis v. Travelers Insurance Co., 123 So.2d 780 (La. Ct. App. 1960), affirmed 241 La. 433, 129 So.2d 729 (Sup. Ct. 1961), all of which held the Longshoremen's and Harbor Workers' Compensation Act the exclusive remedy for injuries sustained while loading or unloading ships on navigable waters.
The County Court correctly observed herein, "there is nothing in the facts to justify a determination that this case is within the `twilight zone' doctrine. The petitioner in the instant case was clearly engaged, at the time of his injury, in the unloading of a ship, which is the work of a stevedore and is, of course, directly related to commerce and navigation."
Parker v. Motor Boat Sales, Inc., 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184 (1941), held the Federal Longshoremen's and Harbor Workers' Compensation Act applicable to the exclusion *131 of the state compensation law where the accident occurs in a boat on a navigable river, even though the employee was hired primarily as a nonmaritime employee and habitually performed such duties on land. Cf. Green v. Simpson & Brown Const. Co., 14 N.J. 66, 71 (1953), holding that "a state has no power to enact statutes granting workmen's compensation for injuries sustained on navigable waters * * *." See, too, Pennsylvania R. Co. v. O'Rourke, 344 U.S. 334, 341, 73 S.Ct. 302, 97 L.Ed. 367 (1953). 33 U.S.C.A. §§ 903, 905, provide that the liability of the employer under the Federal Longshoremen's and Harbor Workers' Compensation Act "shall be exclusive and in place of all other liability of such employer."
We find no substantial merit in petitioner's argument that there was no testimony as to who requested him to go aboard ship to help unload the cement. Petitioner testified that on the day of the accident he was working in the warehouse, loading bags of cement on the trucks to be carried to all parts of the country, when he received instructions "to go down in  on the ship, and still load patios [meaning pallets] for to come up on the deck. * * * four men to a pallet." While he did not specify who gave these instructions, the fair inference is that they were given by some authorized representative of the respondent. The trier of the facts so found. If that were not so, then petitioner could not justifiably claim that his injury arose out of and in the course of his employment by respondent.
So, too, we find lacking in persuasion or materiality petitioner's contention that respondent failed to prove the tonnage of the ship or that it was in commission and capable of navigation under its own power. The presence of the ship at this dock on a navigable river, containing a cargo of cement which was being unloaded therefrom by the use of the ship's crane, evidences that it was in commission and presumptively capable of navigation under its own power. There is not a scintilla of evidence to the contrary.
*132 True, there was no specific proof in the record as to the tonnage of the ship in question, although the nature of its cargo, number of holds, and deck crane would suggest that it was relatively large. While the Federal Longshoremen's and Harbor Workers' Compensation Act does not extend its benefits to "any person engaged by the master to load or unload * * * any small vessel under eighteen tons net * * *," there is no claim here that petitioner was "engaged by the master" of the ship to unload it. He was employed by respondent to do the unloading, and the statute contains no exclusion as to such an employer by reason of the ship's tonnage. Furthermore, there was no evidence that this vessel was "under eighteen tons net," so as to make the federal act inapplicable even as to one engaged by the master of the ship. The fair inference is that its tonnage was 18 or more net. Petitioner testified that there were 15 holds on the vessel.
The judgment of the County Court is affirmed.