87 N.J. Super. 313 (1965)
209 A.2d 340
CALLISTUS J. KELLY, PETITIONER-RESPONDENT,
v.
R.T.C. SHIPBUILDING CORP., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 15, 1965.
Decided March 29, 1965.
*314 Before Judges CONFORD, KILKENNY and LEWIS.
Mr. Isidor Kalisch argued the cause for appellant.
Mr. David Novack argued the cause for respondent.
The opinion of the court was delivered by KILKENNY, J.A.D.
Petitioner was injured on August 24, 1959 while working as a pipefitter and boilermaker in the employ of respondent. The accident occurred aboard a pilot boat, named "Philadelphia," which was undergoing extensive alterations, improvements and repairs in a drydock on the navigable waters of the Delaware River, at respondent's shipyard in Camden.
Petitioner's workmen's compensation claim petition was dismissed by the New Jersey Division of Workmen's Compensation on the ground that petitioner's work, at the time of the accident, was that of a "repairman working on a completed vessel" and, hence, his remedy was exclusively within the federal jurisdiction, under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq.
On appeal, the Camden County Court reversed the dismissal of the claim petition, holding that the work being performed involved such a "major alteration" as to be tantamount *315 to a "conversion" and not merely "normal repairs," thus entitling petitioner to pursue a workmen's compensation claim under the state law. Reliance was placed on such a distinction as formulated in Allisot v. Federal Shipbuilding & Dry Dock Co., 4 N.J. 445 (1950). The County Court remanded the matter to the Division for a full hearing. After entry of a judgment in the Division in petitioner's favor, there was a judgment entered in the County Court under its retained jurisdiction. Thereupon, the employer took this appeal from the County Court judgment.
The sole issue before us is whether, under the facts herein, petitioner's remedy is exclusively within the federal jurisdiction. There is no doubt that petitioner could have availed himself of the remedy provided by the Longshoremen's and Harbor Workers' Compensation Act, because the accident happened aboard a vessel in navigable waters, even though the work was being done in a drydock. Dunleavy v. Tietjen & Lang Dry Docks, 17 N.J. Super. 76 (Law Div. 1951), affirmed o.b. 20 N.J. Super. 486 (App. Div. 1952); Calbeck v. Travelers Ins. Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962). Calbeck laid down the rule that an injured workman may seek relief under the Longshoremen's Act, so long as the vessel upon which he was working was "upon navigable waters," including any dry dock, 33 U.S.C.A. § 903, and the right to relief does not depend upon whether he was making repairs at the time or completing the construction of the launched vessel. However, the availability of the federal remedy is not to be confused with its exclusiveness.
The work operation herein involved substantial alterations and improvements to this pilot boat at a contract price in excess of $285,000. The job required the placing of the boat in dry dock for approximately four months. During that time, the vessel would be out of commission because, among other things to be done, the boat was being converted from steam operation to diesel power. This required removal of the steam boilers, piping and other accessories connected with *316 operation by steam, in place of which would be substituted the equipment and facilities for a diesel operated vessel. Petitioner was engaged as a pipefitter and boilermaker in carrying out this phase of the work when he was injured.
In addition to the basic contract calling for the complete conversion of the power plant from steam to diesel, there were 14 extra work items listed which required the respondent to make 100 or more other alterations or repairs to the boat. These included, among others: (1) removal of pantry and store room bulkheads and interior furnishings from middle of pilot's quarters; (2) removal of longitudinal wood bulkheads Port and Starboard and replacement with 1/8" steel bulkheads; (3) removal of all wood doors to pilot's room and installation of flush wood doors in existing openings (14 doors); (4) removal or rearrangement of all electrical cables disturbed by removals and renewals of bulkheads; (5) rearrangement of lighting circuits in lounge; (6) removal of all line-tile from lounge and pilot's room and replacement with 3/4" magnesite; (7) removal of existing propeller shaft and installation of owner-furnished spare shaft; and (8) installation of two owner-furnished steel single berths in stateroom.
The employer argues that our recent decision in Gaddies v. Trenton Marine Terminal, Inc., 86 N.J. Super. 125 (App. Div. 1965), supports its contention that jurisdiction herein was exclusively under the Longshoremen's and Harbor Workers' Compensation Act. We do not agree. The Gaddies case is factually distinguishable in one material respect. There, the workman was injured while he was on board ship, unloading a vessel then in full commission and moored to a dock in navigable water. We noted that the loading and unloading of a ship was the work of a stevedore, a distinctly maritime job. The "twilight zone" doctrine, Davis v. Department of Labor, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942), was not applicable in Gaddies because of the nature of the work and the fact that the accident happened aboard a ship upon navigable waters. Thus, Gaddies is inapposite factually.
*317 In Dunleavy, supra, the workman, an electrician, was injured while on board a vessel making repairs to the refrigeration compartment. The work was evidently not substantial or of long duration because the ship was manned with its crew and ready to sail on the following morning, when Dunleavy boarded the vessel to do this hurry-up repair job. Dunleavy pursued a claim for relief under the Longshoremen's Act and obtained redress for his injuries thereunder. Thereafter, he attempted to process a claim under our state workmen's compensation law. That claim was dismissed on the ground that he had already made his election, under the "twilight zone" doctrine set forth in Davis v. Department of Labor, supra, and was thereby precluded from seeking further relief under the state workmen's compensation act.
There is some question as to the present vitality of that part of the Dunleavy opinion which stated that the making of the particular "repairs," under the circumstances therein, placed the injured workman within the purview of the "twilight zone" doctrine. In the more recent case of Flowers v. Travelers Insurance Company, 258 F.2d 220 (5 Cir. 1958), cert. denied 359 U.S. 920, 79 S.Ct. 591, 3 L.Ed.2d 582 (1959), it was held that when a workman is injured while making "repairs" to a ship in navigable waters, his remedy is exclusively under the Longshoremen's Act. In Flowers, the work was being done from a floating dry dock.
Assuming that the rule in Flowers is controlling  that the remedy is exclusively under the federal act when the injury occurs while making "repairs" to a vessel upon navigable waters  we find that rule inapplicable to the facts herein. The work being performed on this pilot boat was more than the making of normal repairs. We agree with the County Court that it was "tantamount to a conversion" of the vessel. It may not have been a "conversion" within the technical meaning of that term, as used in maritime parlance. The boat was not being changed into a different type of vessel. It was to retain its character as a pilot boat. However, while the work operation herein was not of the magnitude *318 of that in Allisot v. Federal Shipbuilding and Dry Dock Co., supra, whereby a former Navy transport vessel was converted to an Army transport, the work on this pilot boat was of sufficient magnitude to make it factually akin to that in Allisot and to make it "tantamount" to a conversion, thus bringing the case within the rationale of the "twilight zone" doctrine. Certainly, with its motive power removed, the "Philadelphia" lost its utility and navigability as a pilot boat for a substantial period of time.
This is the kind of case which gave rise to the "twilight zone" doctrine, as first developed in the Davis case, supra, and adhered to by our own Supreme Court in Allisot, supra. Calbeck does not repudiate the doctrine. It recognizes the rule in Davis as still applicable to the facts of a particular case. We reach the conclusion that the situation herein falls within that shadowy area described in Davis as warranting a recourse by the injured workman to either the relief furnished by the Longshoremen's Act or that available under the state workmen's compensation law.
No other issue having been presented on this appeal, the judgment of the Camden County Court is affirmed.